UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

AVOYELLES PARISH SCHOOL BOARD     CIVIL ACTION NO. 08-1374

VERSUS     DISTRICT JUDGE JAMES T. TRIMBLE

UNITED STATES
    DEPT. OF INTERIOR, et al     MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION
on Public Road Issue
With Reduced Time for Objections

Before the court is a motion to dismiss filed by Le Chevalier, Inc., doc. #37, a motion for summary judgment by William D. Arnouville, et al, doc. #48, a motion for summary judgment filed by the Avoyelles Parish School Board, doc. # 68, two motions for summary judgment filed by Elder Properties, docs. # 71 & 72, and a motion for summary judgment by the United States, doc. #73. All of the motions have been referred to me by the district judge for report and recommendation.

This is a suit for a servitude of passage under Louisiana law (access easement) to an enclosed estate filed by the Avoyelles Parish School Board (the school board), owner of the enclosed estate. The property is described as all of Section 16, Township 2 North, Range 6 East, Avoyelles Parish Louisiana and has, in the

past, been used for hunting and other recreation[1]. As required by Louisiana law, plaintiff sued all of the contiguous landowners, being Elder Properties (Elder[2]) on the north and west, the United States and the Arnouville et al defendants (Arnouville) on the east, and Le Chevalier, Inc.[3] (Le Chevalier) on the south.

Access to the school board's land was historically by way of Louisiana Highway 452, which everyone agrees is a public road. From the end of Highway 452, access was by way of the continuation of the same road, which continues as an unpaved road known as White Horse Road[4] to the first intersection, locally known as "first crossing", then by way of the continuation of the same road which from that point is mostly[5] known as Lac[6] Long Road or Lake Long Road, then to Buck or Bucks or Buck's road to the property of

---

[1] As the government has helpfully explained in 08-1364, Section 16 of every township was reserved by the United States for the support of the schools prior to Louisiana's statehood. The State, through the parish school boards, holds Section 16 lands in trust for the benefit of public education. Ebey v. Avoyelles Parish School Board, 861 So.2d 910 (La. App. 3d Cir. 2003).

[2] In this Report, Elder will also refer to the predecessors in title to the current owner which were various family members and family companies.

[3] On the attached plat, the Le Chevalier lands are shown identified as "La Nuit, Inc."

[4] This portion of the road is also sometimes called Lac Long Road or Lake Long Road since the road is one continuous stretch of road.

[5] Counsel have suggested that some "locals" may refer to it , or a portion of it, as White Horse Road. The road is one continuous road but, perhaps, referred to by different names in different parts, by different people.

[6] "Lac" means "lake" in French. The area of the state surrounding and including the area which is the subject of this suit is of French heritage.

plaintiff.

A plat of Section 16 and the surrounding properties is attached. Also attached is a plat which shows the subject property in its relation to Highway 452, Lac Long Road, and Buck Road.

Specifically, the access roads--Highway 452, Lac Long Road, and Buck Road-historically ran through property acquired in 1988 by the United States through the Fish and Wildlife Service for use as the Lake Ophelia Wildlife Refuge and then Buck Road continued through the government's property in Sections 3 and 10 and then entered the Elder property on the east side, before continuing to the north boundary of the school board's land in Section 16. There is evidence in the record that the road historically continued on to the community of Bordelonville by way of a bridge over Bayou Jeansonne which is southeast of the subject property. However, the bridge has been repeatedly burned.

In 1993, agents of the refuge began restricting access along Buck Road through the refuge's Section 10 lands. Elder and others filed suit in this court[7] which suit resulted in a compromise agreement whereby Section 10 remained closed to access but Elder was granted a servitude 20 feet wide from Buck Road near the southern boundary of Section 3 along the southern boundaries of Sections 3 and 4 to the point where the new road entered Elder's

---

[7] Elder Properties, et al v. United States, et al, docket number 94-1408.

Section 9 land near its northeast corner.[8]   The new road was referred to in the compromise agreement and, in this proceeding too, as the "dog leg". About six years ago, Elder put up a gate on the dog leg road where it entered his land near the northeast corner of Section 9 and, from that time, he denied the school board access to its land in Section 16 through his property. Because Elder had cut off access, and as an accommodation to the school board, the United States allowed the school board to allow persons accessing school board land to park their vehicles near the southern boundary of Section 3 on U. S. government property and from there to drive their ATV's[9] through Sections 10 and 15 lands owned by the government, in order to access Section 16 which is the school board's land.    Use  of  other  vehicles was still prohibited. When a new refuge manager came along about two years ago, the Fish and Wildlife Service chose to deny the school board access through its lands even by way of ATV's.      Because the school board then had no access whatsoever to its land, and no way to use its land, this suit was filed and timely removed to this court. The court then bifurcated the question of access[10] into the

---

[8] A map of this route is attached to the compromise agreement in the record of that case in this court.

[9] An ATV is an all-terrain vehicle or "four-wheeler" which is a golf cart-sized vehicle with low-pressure tires and handlebars like a motorcycle and is used to traverse a wider variety of terrain than most other vehicles can handle.

[10] See La. CC. Art 692.

4

issues of what roads are public in the area of the subject land, the shortest and/or best route, and damages, if any. See Order dated March 24, 2009, doc. #64. Summary judgment motions on the issue of what roads are public were invited, following brief discovery, and are now the subject of this Report and Recommendation.

The Law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so

respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict *412 in her favor." Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 178 (5th Cir.1990) ( citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the

record contains insufficient proof concerning an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325, 106 S.Ct. 2548; see also Lavespere, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See Celotex, 477 U.S. at 324, 106 S.Ct. 2548. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. See id. at 325, 106 S.Ct. 2548; Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994); Austin v. Will-Burt Company, 361 F. 3d 862, (5th Cir. 2004). This burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Little, id.

All evidence must be considered, but the court does not make credibility determinations. If the movant fails to meet its initial burden, summary judgment should be denied. Little, 37 F.3d at 1075.

The Law of Enclosed Estates

Louisiana law with regard to the right of access to an enclosed estate is found in La. CC Art's. 689 to 696 and the jurisprudence interpreting and applying those rules.

Article 689 provides:

The owner of an estate that has no access to a public road may claim a right of passage over neighboring property to the nearest public road. He is bound to indemnify his neighbor for the damage he may occasion.

The legal servitude of passage is predicated on necessity. The test is satisfied when an estate has no access or the access is insufficient for the needs of the estate. See Yiannopoulos, *La. Civil Law Treatise, Predial Servitudes*, §93 (2d Ed. 1997). A "public road" is any place that is open to vehicular traffic by members of the general public, even if the public is unlikely to use the road except to go to a particular place, and maintained by the public. Kavanaugh v. Bowers, 826 So.2d 1165 (La. App. 5th Cir., 2002), writ den. 828 So.2d 575 (La. 2002); La. CC Art 457.

Article 690 provides:

> The right of passage for the benefit of an enclosed estate shall be suitable for the kind of traffic that is reasonably necessary for the use of that estate.

Therefore, the scope of the right of way is determined by the actual needs of the enclosed estate. Davis v. Culpepper, 794 So.2d 68 (La. App. 2nd Cir. 2001, writ den. 804 S.2d 646 (La. 2001). The owner of the enclosed estate may thus construct on the right of way the kind of road reasonably necessary for the exercise of the right of way. La. CC Art. 691.

Article 692 provides:

> The owner of the enclosed estate may not demand the right of passage anywhere he chooses. The passage *generally* shall be taken along the shortest route from the enclosed estate to the public road at the location least injurious to the intervening [servient estate] lands. (Emphasis added.)

The term "generally", as used in the article is an acknowledgment that there are exceptions to the rule that the

8

passage shall be taken along the shortest route to the public road. Two of the exceptions were recognized in Davis v. Culpepper, supra: first, where the estate that provides the shortest route is covered by water or is otherwise not accessible year-round and, second, where the costs associated with crossing the estate which provides the shortest route makes it economically unfeasible. Although Davis recognized only those two exceptions, other cases have applied other considerations in determining the best route, even if it is not the shortest. For example, some cases have considered whether the route is the route which has historically been used to gain access to the property. See Bailey v. McNeely, 918 So.2d 1124 (La. App. 3d Cir. 2005); Bouser v. Morgan, 520 So.2d 937 (La. App. 3d Cir. 1987); Martini v. Cowart, 23 So2d 655 9 La. App. 1945); Braxton v. Guillory, 721 So.2d 114 (La. App. 3d Cir. 1998). Others have considered the fact that a particular route might bifurcate the servient estate. See Pearson v. Theriot, 534 So2d 35 (La. App. 3d Cir. 1988). No doubt there are other conceivable and valid exceptions which the Davis court did not envision. Some possible exceptions come readily to mind, for example the fact that a proposed route would traverse a military base or other sensitive government compound or where, for example, the route would cross through a nuclear facility. The point is that there may be numerous reasons a shorter route might legitimately be rejected in favor of a longer route, other than the two situations recognized in Davis.

Some Louisiana cases recite a simple formulaic approach to determining where a servitude of passage should be located, by suggesting that, first, the shortest distance should be determined and only then should a balancing test be utilized to determine where on the servient estate the servitude should lie. See, e.g. Davis, supra at p.74; May v. Miller, 941 So.2d 661 (La. App. 3rd Cir., 2006) at p. 666. Nevertheless, the cases, including the two cited ones, do not apply such a ritualistic matrix but instead consider whether a route other than the shortest route may be preferred. See Davis, supra at p. 74; May, supra, p.667; Cash Point Plantation Equestrian Center, Inc. v. Shelton, 920 So.2d 974 (La. App. 2d Cir. 2006). The true test has been stated as requiring the court to consider not only distance, but also the least injury to the servient estate and the most practicable way. Mercer v. Daws, 186 So.2d 877 (La. App. 1939). Stated differently, even if not the shortest, the route chosen might well provide the most practical, feasible and aesthetic resolution possible. Bailey v. McNeely, supra.

The Law of Public Roads

As stated above, La. Civil Code Article 457 provides that a public road is one that is subject to public use. Professor Yiannopoulos has explained that, in modern times, "it became settled that the public may acquire in Louisiana an interest in the land on which a road is built or in the use of a road in a variety

10

of ways. Thus, the public may acquire land or a servitude for the construction and maintenance of a public road by one of the methods of the Civil Code by which ownership or servitudes are acquired, including purchase, exchange, donation, expropriation and prescription. Most frequently, however, the public acquires an interest in a road by dedication." See Yiannopoulos, *La. Civil Law Treatise, Property*, §62 (2d Ed. 1980).

Professor Yiannopoulos lists several ways a road can be dedicated: 1) formal dedication by written act, 2) implied dedication by clear offer and acceptance, 3) statutory dedication under LSA-R.S. 33:5051, and 4) tacit dedication pursuant to LSA-R.S. 48:491. In addition, the professor explains that, in the case of a river road, there might exist a legal servitude and, finally, a road might be acquired with 30 years use by acquisitive prescription. La. CC Arts. 740, 742.

The professor's analysis clearly is concerned with acquisition of land or a servitude for a public road. However, the court notes, that at least for one limited purpose, a road has been considered public without regard to whether there is ownership of the bed of the road or even a servitude. Specifically, it has been held that a particular road on private property might be considered to be a "public road" for purposes of application of Louisiana's non-resident motorist law. See Galloway v. Wyatt Metal and Boiler Works, 181 So. 187 (1938).

Analysis

All of the parties agree that there is no available evidence in this case that the first three kinds of dedication may be applicable here.[11] Neither have the parties argued or provided evidence as to the "river road" servitude or as to a servitude acquired by 30 years acquisitive prescription. Nor have the parties suggested that a road might be considered public for purposes of applying the enclosed estates law of Louisiana, even in the absence of dedication, by analogy to the Galloway case dealing with the non-resident motorist law.

Therefore, the issue presented by motions in this phase of the case is whether there has been tacit dedication of Lac Long road and/or Buck road by three years maintenance by the Avoyelles Parish Police Jury. All parties agree and stipulate that Bayou Natchitoches Road, located (as relevant here) in Sections 14, 22 and 23 is a public road and that Highway 452 is too. Those four roads are the only roads in the area which are, or might be, available for purposes of application of the enclosed estates law, La. CC Art. 689 *et seq.*[12]

The school board and Elder have both submitted affidavits as to the prior maintenance of Lac Long Road and of Buck Road. After

---

[11] See also the affidavit of Roland F. Dugas, III.

[12] None of the parties suggest that Pug's Road is a public Road and the unopposed affidavit of Mr. Arnouville confirms that it is not.

a careful review of the affidavits and the briefs of the parties, and the arguments of counsel at the hearing on May 4th, I must conclude that there remain genuine issues of material fact as to whether Lac Long Road and/or Buck Road are public roads, that is, whether there has been three year's maintenance in accordance with Section 491.

Elder has submitted the affidavit of Frank Willis, a long-time engineer and land surveyor with whom the court is very familiar. Willis concludes that there is no public road running through the lands of Elder. Mr. Willis' affidavit is not helpful because it simply contains legal conclusions that invade the province of the court.

Next, Elder submits an affidavit by James C. Porter who is the Planning Support Engineer with the Office of Planning and Programming of the Louisiana Dept. of Transportation. Mr. Porter states that his office performed an inventory of parish roads in Avoyelles Parish in 1995 and attaches a parish map ostensibly showing all public roads. The map shows Highway 452 as a public road to the point where it ends just west of "first crossing". However, Lac Long Road and Buck Road are not shown on the map and therefore, according to the affidavit, are not public roads. However, just because a road is not on a map does not mean it is not public. Were that the case, then the Civil Code and Revised Statutes could just state that "public roads are those shown on an

official map of the parish". They don't. Instead, the Code and statutes provide detailed methods, as explained by Professor Yiannopoulos, for determining if a road is public or not. A fourteen year old map is neither determinative nor even very helpful.

Elder attaches also the affidavit of Gregory Joseph Gagnard who testified that he's lived on Highway 452 in Avoyelles Parish all 53 years of his life. He is familiar with the roads east of Highway 452 and has traveled White Horse Road to first crossing for 43 years, Lac Long Road (east of first crossing) since 1990, and buck Road for the last 12 years. He testified that he recalls a sign at the end of White Horse Road in the 1980's saying something to the effect: "Private Road Beyond This Point" and bearing the name of Pan American Oil Company and others. He also testified in his affidavit that between 1990 and 1995, Lac Long Road was in "deplorable condition", having an irregular surface and deep ruts and large holes in it. The road could be traveled only at very low speeds and was "practically impassable" except in a truck in good weather. He has never observed Avoyelles Parish equipment or employees performing maintenance on Lac Long Road east of first crossing. Buck Road, for the last 12 years during which he is familiar with it has been maintained by personnel of Lake Ophelia Wildlife Refuge.

"Speed" Juneau testified by affidavit that he is 66 years old

and is the Registrar of Voters in Avoyelles Parish. He has lived east of the lands at issue here in the Grand Lake area of the parish for 16 years and has traveled to work in downtown Marksville over Lac Long Road, and White Horse Road. Before that, and since 1963 or 4 he traveled those roads regularly to and from a camp he had in the same area. While he has seen the police jury performing maintenance on White Horse Road, he has never seen them performing work on Lac Long Road. He says that prior to the United States acquiring the Lake Ophelia Wildlife Refuge property [in 1988] the roadway east of first crossing was "virtually impassable", rough, irregular, and with deep ruts and holes. It had to be traveled at low speeds.

Roland Dugas testified that he is a "land man" and that he reviewed the public records in Avoyelles Parish. He said that Elder granted the parish a servitude in 1966 for White Horse Road. He found no other relevant servitudes of record in favor of Avoyelles Parish. He did, however, find records where Elder granted a private servitude to Pan American Petroleum Company in 1964 for its private use together with that of other landowners along the right of way. He also found where other landowners had granted similar rights of way to Pan American for what is now known as Lac Long Road. He also found servitudes in favor of Elder regarding what is now called Buck Road.

Finally, Elder has filed his own affidavit in support of his

15

motion for summary judgment. While obviously self serving, the document does provide valuable historical information about the properties involved here. He also testified that Lake Long Road was built by Pan American in the 1960s pursuant to the grants of rights of way by Elder. He states that he has never observed the Avoyelles Parish Police Jury performing any work on Lake Long road or on Buck Road. Elder also describes a lawsuit in this court, Elder Properties, et al v. United States, which is docket number 94-1408 in which the plaintiffs sued for access to the Elder properties by way of Buck Road. The suit resulted in a compromise agreement on July 31, 1995 whereby the government granted a "dog leg" shaped access in its Section 3 and 4 lands from Buck Road over to the Elder property in Section 9.[13]

Affidavits were also submitted on by the school board. First, Russell W. Watson testified that he is 60 years old and has lived

---

[13] The record of that suit, of which this court takes judicial notice, including the plats included in it, shows that Buck Road historically ran from Lac Long Road in Section 27, down through Section 27, 34, 3, and 10, where it entered Section 9 belonging to Elder. The suit resulted in a compromise agreement in which the United States, in lieu of allowing plaintiffs in that case to traverse its Section 10 lands, granted to Elder a 20 foot servitude in its Section 3 and 4 lands along the southern boundary of the two sections to where it entered the Elder property in the extreme northeast corner of Section 9. Therefore, if Buck Road is public, by having been maintained three years prior to 1988 when the government acquired its lands, it would include a portion of the government's land in the approximate northwest quarter of Section 10 and would not include Elder property in the approximate northeast quarter of section 9 nor would it include the dog leg in the government's Section 3 and 4 lands.

Importantly, the complaint in that case filed by Elder describes Buck Road as "Buck Road (previously known as the Bordelonville Road)". Even if Buck Road, as "the Bordelonville highway" was at one time public as a result of maintenance by the police jury, all or part of it might have been abandoned; evidence regarding that has not been presented to the court.

in Avoyelles Parish and has used Lac Long Road since 1972. He knows that, in 2004, an agreement was entered into between the United States and the Avoyelles Parish Police Jury pursuant to which the United States Fish and Wildlife Service placed limestone on a portion of Lac Long Road from its beginning and past its intersection with Buck Road. He also says that, in 1972, Buck Road, then known as "Old Tram Road" was in existence and ran from Lac Long Road to Bordelonville to the south, through the Elder property [in Section 9]. He testified that the police jury performed maintenance on the road and built a bridge over Bayou Jeansonne. The police jury regularly performed maintenance on both Lac Long Road and Old Tram (Buck) Road. The police jury maintained Old Tram Road throughout the 1990's and built a road to offset Old Tram Road where it went through the refuge property. [This is presumably the "dog leg", referred to above.][14]

Floyd Voinche, Sr. testified that he is 63 years old and has used Lac Long Road since 1952 and the road has been graded and maintained from its beginning up to the point of the Bayou Jeansonne bridge.[15]

---

[14] The Arnouville defendants argue that this affidavit by Watson proves that the offset road was on Elder property in Section 9 and was built with public funds and is thus a public road. However, it most likely refers to the dog leg on government property, not the road on Elder property. At the very least, the affidavit is unclear about what Mr. Watson means by "offset road" and where it was located.

[15] This would presumably include part of Buck Road since the Bayou Jeansonne bridge is on Buck Road, not Lac Long Road. In this respect, the affidavit is unclear.

Attached next is the affidavit of Jimmie J. Lemoine. Lemoine is 58 and has lived in Avoyelles Parish all that time. He has used Lac Long Road consistently since 1955 and still uses it today. Since 1984, he has worked for the Avoyelles Parish Police Jury and personally graded Lac Long Road from its beginning to Grand Lake, about 15 miles.[16] From 1984 to 2006, the police jury placed rock and culverts on Lac Long Road. He also attests that, from 1986 to 1996, he maintained Buck Road including grading it from Lac Long Road to the Bayou Jeansonne bridge.

Next, Darla J. Borden testified in her affidavit that she has worked for the Avoyelles Parish Police Jury since 1980 and has inspected jobs being performed on Lac Long Road. She says that maintenance was done on the road from 1980 to the present. In addition, she says that Buck Road work was done by the police jury until 1996 and the bridge over Bayou Jeansonne was built by the jury in the early 1980's. Since 2006, the Fish and Wildlife Service has performed maintenance on Lac Long Road and Buck Road. Borden attaches records of the police jury concerning the work done.

The Borden affidavit presents several problems. First, the attached maintenance records refer to the work being done as having

---

[16] It is not clear from the affidavit if this happened more than once. Other affiants have said that, in the early 1990's, Lemoine was paid to grade the road to Grand Lake hunting club by the hunting club. The hunting club is in the Grand Lake area which is east of where Buck Road intersects Lac Long Road. Questions of how this might legally have been done aside, in his affidavit Lemoine may be referring to this single occasion. Or he may be saying that he has graded it more than once. His testimony in his affidavit is far from precise.

been done on White Horse Road, not Lac Long Road. We do not know who completed the records—a grader operator such as Mr. Lemoine, or someone else. Second, it is not clear how much of the work was performed before the United States became the owner of the land, for, as will be seen, maintenance after that time is irrelevant. Third, it's not clear when maintenance on Buck Road was performed or began or where the work was performed, i.e. on United States property or on Elder property, or otherwise.

Next, an affidavit by Allison Laborde identifies the maintenance agreement between the parish and the United States in 2004.

Finally, Don Joseph Brevelle testified that he has been employed by the lake Ophelia National Wildlife Refuge as an equipment operator and tractor driver for 19 years. He recalls a sign at the end of White Horse Road at first crossing at the time the United States acquired Lake Ophelia in 1988 that said "Private Road Beyond This Point." Remnants of the sign are at the refuge offices even now. The condition then of Lake Long Road was "deplorable". The road was rough and it had deep ruts and large holes in it. I could be traveled only at low speeds. Since 1988, when the U. S. acquired the property, he has maintained Lake Long Road and the parish has not.

The school board argues that the positive evidence contained in its affidavits outweighs the negative evidence offered by Elder

consisting of affidavits of persons who say they never saw the police jury performing maintenance. While the fact that these persons did not see maintenance does not mean it did not happen, their testimony is still important in that they also said that the condition of the roads was bad, suggesting to the court a lack of prior maintenance by anyone.

More important is the fact that the testimony of the affiants, taken as a whole, is simply not precise enough to definitively answer the question presented. This is especially true since in some cases the testimony is unclear whether the maintenance occurred before or after the United States acquired its lands in 1988. As the government correctly points out in brief, state laws providing for the acquisition of interests in land by operation of law do not apply with respect to lands owned by the United States. See Pavell v. Berwick, 48 F.Supp. 246, 248 (W.D.La. 1943). Acquisitive prescription does not run against the United States. US v. Pappas, 814 F.2d 1342 (9th Cir. 1987) (One cannot gain title to land of the United States through adverse possession or through Government's acquiescence). LSA-R.S. 48:491 is akin to prescription.

Therefore, I find that there exist genuine issues of material fact and the motions for summary judgment by the school board, doc. # 68, and by Elder, doc. # 71, should be DENIED. Similarly, I reject the contention of Le Chevalier, Inc. and

Arnouville that expropriation is the only method by which the school board can gain access to its property. Those parties have cited no authority so holding nor presented any logical reason why the state's enclosed estates laws should not be applicable to a public body who owns lands it cannot get to to use. The Louisiana Supreme Court has recognized a school board's ability to use the enclosed estates laws to gain access to their property. Vermillion Parish School Board, 270 So.2d 523 at 525-6(La. 1972). Therefore, their motions, document #'s 37 and 48, respectively, should also be DENIED.

Finally, the United States argues that it is entitled to summary judgment on the issue of Lac Long Road and Buck Road are public roads by virtue of being maintained by the police jury after the United States' acquisition of the property in 1988. Because one may not acquisitively prescribe against the government, I agree and partial summary judgment should be GRANTED on this limited issue.

Therefore, for the foregoing reasons, IT IS RECOMMENDED THAT the motion to dismiss by Le Chevalier, Inc., doc. # 37, be DENIED; the motion for summary judgment by the Arnouville defendants, doc. # 48, be DENIED; the motion for summary judgment filed by the school board, doc. # 68, be DENIED, the motion for summary judgment filed by Elder, doc. # 71, be DENIED; the second motion by Elder, doc. # 72 be PRETERMITTED as relevant to the

next phase of this case, and; that the motion for summary judgment by the United States, doc. # 73, be GRANTED.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have five (5) business days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within five (5) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the district judge at the time of filing. Timely objections will be considered by the district judge before he makes his final ruling. No extensions of time to object will be granted.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FIVE (5) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this the 11th day of May, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE



| PROPERTY OWNER & ACCESS INFO | | |
|---|---|---|
| ROAD NAME | SECTION | OWNER |
| U.S. WILDLIFE & FISHERIES ROAD BUCKS ROAD | 27 & 34 3 & 4 | LAKE OPHELIA WMA U.S. FISH & WILDLIFE SE |
| OLD TRAM ROAD | 9 | ELDER REALTY CO., INC |
| KNIGHT OIL TOOL ROAD | 15 | LA NUIT, INC. |
| PUG'S ROAD | 14 | WILLIAM ARNOUVILLE |
| PUG'S ROAD | 14 | CLAY ROBLIN |
| PUG'S ROAD | 14 | DAVID JOHN GUILLOT |
| PUG'S ROAD "B-B" | 14 | WILLIAM ARNOUVILLE |
| PUG'S ROAD "C-C" | 14 | MORENO PROPERTIES, L |
| PUG'S ROAD "A-A" | 14 | CLAY ROBLIN |
| U.S. WILDLIFE & FISHERIES ROAD LAKE LONG ROAD | | 40,617' FROM LA. HW |

Map labels:

UNITED STATES OF AMERICA LAKE OPHELIA WMA U.S. FISH & WILDLIFE SERVICES SECTION 4

BUCKS ROAD

OLD FENCE CORNER

ELDER REALTY CO., INC. OR ASSIGNS SECTION 8

ELDER REALTY CO., INC. OR ASSIGNS SECTION 9

OLD TRAM ROAD

LAKE LONG

UNITED STATES OF AMERICA LAKE OPHELIA WMA U.S. FISH & WILDLIFE SERVICES SECTION 10

SECTION 11

REF. 6 FIELD NOTES FOUND HACKBERRY TREE

REF. 3

UNITED STATES OF AMERICA LAKE OPHELIA WMA U.S. FISH & WILDLIFE SERVICES

BAYOU DE L'ISLE

DAVID GUILLOT

CLAY ROBLIN

ELDER REALTY CO., INC. OR ASSIGNS SECTION 17

AVOYELLES PARISH SCHOOL BOARD SEC. 16

SECTION 15

SECTION 14

WILLIAM D. ARNOUVILLE

PUG'S ROAD

WILLIAM D. ARNOUVILLE

REF. 5

REF. 3 & 5

LA NUIT, INC.

BAYOU JEANSONNE

KNIGHT OIL TOOL RD. ROAD

BAYOU NATCHITOCHES ROAD

LA NUIT, INC. SECTION 20

LA NUIT, INC. SECTION 21

SECTION 22

SECTION 23

LA NUIT, INC.

NATCHITOCHES ROAD

LINE TABLE
LINE | LENGTH | DIRECTION

EXHIBIT
AREA MAP SHOWING
LA. HWY. 452, LAKE LONG & BUCK RD.
RELATIVE TO SECTION 16 T2N-R6E
SOUTHWESTERN LAND DISTRICT OF LOUISIANA
AVOYELLES PARISH, LOUISIANA

MOREAU PROFESSIONAL LAND SURVEYING, LLC

SCALE 1"=5000'
FOR AVOYELLES PARISH SCHOOL BOARD
AT REQUEST: JIM LEE

DATE 4/15/09

NOT TO SCALE

TO MANSURA

BROUILLETTE
COMMUNITY

RED RIVER

LA HWY 452

LAKE LONG

OLD RED RIVER

First Crossing

LA RIVER
(BAYOU AVOYELLES)

LAKE LONG ROAD

BUCK JEANSONNE

OLD BRIDGE

BAYOU JEANSONNE

T2N-R6E
SEC. 16

Dog Leg

BUCK ROAD

LAKE LONG

TO GRAND LAKE RD & ECHOES DR.

BRIDGE

OLD BRIDGE

TO GRASS LAKE RD.



EXHIBIT

H