RECEIVED
IN ALEXANDRIA, LA.
JUL 1 4 2009
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| AVOYELLES PARISH SCHOOL BOARD | CIVIL ACTION NO. 08-1374 |
| V. | JUDGE TRIMBLE |
| UNITED STATES OF AMERICA, U.S. DEPARTMENT OF THE INTERIOR FOR THE USE AND BENEFIT OF THE U.S. FISH & WILDLIFE SERVICE, ET AL. | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Plaintiff, Avoyelles Parish School Board ("School Board"), is the owner of a tract of land located at Section 16, Township 2 North, Range 6 East, Avoyelles Parish, Louisiana. The school board filed the above captioned suit in Louisiana's Twelfth Judicial District Court on August 21, 2008, seeking forced passage to its Section 16 tract as an enclosed estate.[1] The U.S. Department of the Interior ("Government") timely removed this suit pursuant to 28 U.S.C. § 1441(a) on the basis that this federal district court possessed original jurisdiction over this suit because the interests of the United States and its agency, the Department of the Interior, were at issue by virtue of plaintiff's claims.[2]

The government is the owner of abutting lands, located most notably, at Section 10 that constitute a portion of the Lake Ophelia Wildlife Refuge ("Refuge"). Also made defendants herein are other abutting landowners Bayou Lafourche, Inc. ("Bayou Lafourche"),[3] owner of

---

[1] R. 1-3.
[2] R. 1-1.
[3] Bayou Lafourche filed its answer to the school board's complaint through its curator ad hoc, appointed by the Twelfth Judicial District Court, Bradley P. Dauzat. See R. 27. Therein, the curator attested that, despite attempts to contact Bayou Lafourche through its registered agents, William Ragland, Jr. and Frank Voelker, Jr., no contact was made. Attempt was also made to contact Albert Prevot, President of the former Louisiana corporation. As

1

certain Section 3 land, Elder Properties ("Elder"), owner of Section 9 land, Le Chevalier, Inc. ("Le Chevalier"),[4] owner of certain Section 21 and 27 lands, William D. and Carla Baudin Arnouville ("Arnouville"), owners of certain Section 14, 15 and 22 lands, Clay Emil and Cynthia Gauthier Roblin ("Roblin"), owners of certain Section 11 and 14 lands, and David John and Angela Wynn Guillot ("Guillot") (collectively "Arnouville defendants"), owners of certain Section 14 land.[5]

The school board alleges that it has been denied access to its Section 16 land as a result of actions by both the government and Elder. Specifically, the school board alleges that it historically accessed Section 16 by way of Lac Long Road, located east of Louisiana Highway 452 and Buck Road, which runs southwest from Lac Long Road, through Sections 9 and 10, belonging to the government and to Elder.[6]

Evidence in the record indicates that in 1993, the government began restricting access through the refuge's Section 10 lands along Buck Road. In order to gain access via forced passage to his Section 9 lands, Elder and others filed suit in this court against the government in 1994.[7] That suit resulted in a compromise among the parties which established what is referred to by the parties as the "dog leg," a servitude of passage roughly parallel to the southern boundaries of Section 3, running west from Buck Road to the northeast corner of Elder's Section 9 lands, bypassing the portion of Buck Road which traverses the refuge at Section 10.

---

recounted in the answer, it is believed that Mr. Voelker is deceased and that Mr. Ragland now resides in a nursing home. No information as to the whereabouts of Albert Prevot was found.

[4] Le Chevalier was voluntarily dismissed by agreement of all parties and this court by final judgment of dismissal dated July 9, 2009. See R. 166.

[5] R. 1-3 at ¶¶ 3-9.

[6] For a map of the property and roads at issue in this case, please see plats attached to the magistrate judge's report and recommendation at R. 99, pp. 23-24.

[7] Civil Action No. 94-1408.

At some point after the compromise, Elder erected a gate at the location where the dog leg met his property at its northwest corner. The school board alleges that this action denied access, previously enjoyed, to Section 16, forcing them to negotiate a different route of access with the government through Section 10 refuge lands. The alternate route negotiated by the government and the school board is referred to as the "four wheeler trail," which required school board members and assignees to travel Buck Road south until they reached the northern boundary of Section 10, where they would park their vehicles and continue across the northwestern corner of Section 10 and 15 refuge lands via four-wheeled all terrain vehicles ("four wheelers") until they reached the northeastern corner of Section 16. The school board alleges that, approximately two years ago, the government closed the four wheeler trail and has since denied access to Section 16 along that route, leaving the school board with no access to its property.

This suit was divided into three phases in order to provide the most efficient and organized resolution to this litigation. Pursuant to La. Civ. C. Art. 689, the owner of an enclosed estate may claim a right of passage over neighboring property to the nearest public road. Accordingly, Phase I of this litigation concerns whether or not Lac Long Road and/or Buck Road are public roads by virtue of tacit dedication pursuant to La. R.S. 48:491(B)(1)(a), which provides:

> All roads and streets in this state which have been or hereafter are kept up, maintained, or worked for a period of three years by the authority of a parish governing authority within its parish, or by the authority of a municipal governing authority within its municipality, shall be public roads or streets, as the case may be, if there is actual or constructive knowledge of such work by adjoining landowners exercising reasonable concern over their property.

3

The parties agree that, although there exist other methods of dedication of public roads under Louisiana law, the only potentially applicable method in this case is tacit dedication.

The court directed the parties to file motions for summary judgment on the issue of tacit dedication of Lac Long Road and Buck Road.[8] These motions were referred to the magistrate judge for report and recommendation,[9] which the magistrate judge issued on May 11, 2009[10] after opportunity for briefing and oral argument on the issue. On May 20, 2009, after opportunity for written objections from the parties, this court issued a memorandum judgment adopting the magistrate judge's report and recommendation and, therefore, denying pending motions for partial summary judgment by the Arnouville defendants,[11] the school board[12] and Elder[13] on the basis that the evidence before the court demonstrate the existence of a genuine issue of material fact as to whether or not the Avoyelles Parish Police Jury ("Police Jury") conducted three years of maintenance on Lac Long Road, past an intersection known as "first crossing,"[14] and/or Buck Road with the actual or constructive knowledge of the adjoining landowners as required by statute.

The court also adopted the recommendation of the magistrate that the motion for summary judgment filed by the government[15] be granted in part, in that the court agreed that tacit dedication was in the nature of prescription and that, as such, any tacit dedication of roads lying on lands acquired by the government in 1988 would have to have occurred before the

---

[8] R. 64.
[9] R. 50, 52.
[10] R. 99.
[11] R. 48.
[12] R. 68.
[13] R. 71.
[14] The parties agree that Lac Long Road from La. Hwy. 452 until an intersection known as "first crossing" is a public road. This portion of Lac Long Road is also sometimes referred to as Whitehorse Road.
[15] R. 73.

government acquired such property since acquisitive prescription does not operate as against the United States.

A bench trial of the public roads issue commenced on Monday, June 2, 2009. The school board and Le Chevalier presented evidence on that day and rested. At the close of plaintiff's case, Elder made an oral motion for involuntary dismissal pursuant to Fed. R. Civ. P. 41(B) on the basis that any passage through Elder property previously granted was for access to a recreational site and, accordingly, that passage did not become a public road by reason of upkeep or maintenance as provided in La. R.S. 9:1251(A). The court received a written brief on the issue and heard oral argument from Elder in support thereof before taking the motion under advisement.

The bench trial resumed on Tuesday, June 3, 2009 whereupon the parties advised the court of a tentative settlement. After conferring with the parties, the court issued an order continuing the bench trial of Phase I without date and setting a settlement conference before Magistrate Judge Kirk for June 10, 2009. Prior to the June 10th settlement conference, the court was informed that settlement was no longer likely. Thereafter, the court advised the parties that it would resume the bench trial of Phase I on Thursday, July 9, 2009. On that date, Elder presented its case and rested. The remaining parties participated by cross-examination at their discretion and the trial concluded on that date. The evidence having been closed on Phase I, pertaining to the issue of public roads, the matter is now before the court for decision.

The issue before the court is a narrow one: whether or not a preponderance of the evidence before the court demonstrates that the police jury engaged in maintenance on either or both Lac Long Road, past first crossing, and Buck Road with the actual or constructive knowledge of the adjoining landowner. As stated above, the government acquired the adjoining

land in 1988 and so we restrict our analysis to events before 1988. Defendant Elder was the owner of all adjacent lands from 1955 to 1979[16] and argues against a finding of tacit dedication prior to the government's purchase of what we now refer to as the refuge. It is the court's understanding that defendant Bayou Lafourche, Inc. was the adjoining landowner from the time Elder sold the property until it was acquired by the government. Although, as noted above, Bayou Lafourche, Inc. is now a defunct corporation and has only filed an answer through its curator in this suit, our analysis is no different, as the burden is on the school board to demonstrate that statutory requisites for tacit dedication.

The school board presented evidence which it argues demonstrates that the police jury routinely graded Lac Long Road from its origin at the end of the paved portion of Louisiana Highway 452, eastward to Grand Lake. Further, the school board asserts that evidence before the court suggests that the police jury also engaged in some maintenance of Buck Road, from its origin at Lac Long Road, southeast through Sections 27, 34, 3, 10, 16 and 17. In support of these arguments, the school board introduced maintenance records, handwritten by Jimmy Lemoine ("Lemoine"), a former heavy equipment operator for the police jury, which contain numerous entries from 1992 to 2005 stating that Lemoine "graded Whitehorse."[17] Lemoine testified that, when he wrote "graded Whitehorse," this sometimes meant that he graded the entire length of Lac Long Road from Highway 452 to Grand Lake, as "Whitehorse Road" is simply another name for Lac Long Road. Lemoine also testified that he often did work on Buck Road and even helped to construct the dog leg and to grade it once it was complete. Additionally, Lemoine admitted that he sometimes graded portions of Lac Long Road at the request of private parties and was, for those particular jobs, paid by the private party rather than the police jury.

---

[16] R. 71 at p. 8.
[17] Exhibit D to R. 68, introduced by reference at trial.

These records were verified by Darla Borden, a purchasing agent for the police jury, who testified that the police jury did perform maintenance on Lac Long Road and Buck Road, including a bridge across Bayou Jeansonne. Borden also testified that she understood "Whitehorse Road" to be another name for Lac Long Road.

Although records and testimony introduced by the school board do suggest that the police jury performed some maintenance on these roads, the evidence is inconclusive at best. The court heard testimony from witnesses such as Don Brevelle ("Brevelle"), a U.S. Fish and Wildlife Service Engineer Equipment Operator, which directly contradicts Lemoine's assertion that Whitehorse Road is simply another name for the entirety of Lac Long Road. Brevelle testified that Whitehorse Road refers only to a small section of Lac Long Road running east from the end of Highway 452 to an intersection commonly known as "first crossing." Thus, it is unclear, given the sparse nature of the records and conflicting accounts of colloquial names for Lac Long Road, what regular maintenance was performed east of first crossing.[18]

The court also heard testimony from numerous witnesses such as Edgar Wilkinson, Don Gremillion, Butch Morsey, Tommy Garrot and "Speed" Juneau that Lac Long Road, also sometimes referred to as "Pan Am Road," was posted with signs at first crossing indicating that, from that point on, it was a private road. These witnesses testified that various oil companies that owned oil wells in the area in the 1960's, 1970's and 1980's routinely performed maintenance on Lac Long Road. Additionally, Don Gremillion and Butch Morsey testified that Roy O. Martin Lumber Company performed maintenance on Lac Long Road in order to facilitate logging operations in the area. These witnesses all testified that they had never seen

---

[18] The parties agree that the length of road originating at the end of the paved portion of La. Highway 452 and continuing until the intersection known as "first crossing" is a public road and has been consistently maintained by the police jury as such. Accordingly, our analysis for purposes of tacit dedication is confined to that portion of Lac Long Road east of first crossing until its intersection with Buck Road.

any police jury maintenance on Lac Long Road east of first crossing or on Buck Road. A notable exception to this is the testimony of "Speed" Juneau, a former police jury member, who explained that the police jury did grade Lac Long Road east of first crossing on one occasion during the 1980's when he personally asked the police jury to do this for the benefit of the Grand Lake Hunting Club. Juneau testified that the hunting club reimbursed the police jury for all costs associated with that maintenance and for the salary of Lemoine, the grader operator on that job.

Although these witnesses admitted, on cross-examination, that maintenance by other parties, such as the school board, may have occurred without their knowledge despite their regular presence in the area, we find that such testimony merely creates the possibility of maintenance by the school board, but is not proof thereof.

The court also heard testimony from Joe D. Elder that Elder Properties or its affiliated companies were solely responsible for all maintenance on Buck Road until the government's acquisition of the properties now referred to as the refuge. This testimony directly contradicts Lemoine and Borden's testimony that the police jury often maintained Buck Road.

La. R.S. 48:491 specifically requires that the school board demonstrate three years' maintenance by the police jury on Lac Long Road and/or Buck Road with the actual or constructive knowledge of the adjoining landowner, here Elder, in order to prove tacit dedication. Given the conflicting testimony and sparse colloquial records before the court, we find that the school board has failed to make such a showing. The evidence before the court does demonstrate widespread usage of both Lac Long Road and Buck Road by local residents, concerned business entities and, to some extent, the general public, but it simply does not establish the requisite three years' maintenance under the statute which would enable this court

to adjudge these roads public by tacit dedication. Accordingly, we need not address the issue of knowledge by Elder which, the court notes, he denies vehemently.

It is, therefore, the finding of this court that Lac Long Road, east of first crossing, and Buck Road are not public roads by virtue of tacit dedication pursuant to La. R.S. 48:491(B)(1)(a).

**Alexandria, Louisiana**
**July 14, 2009**

                                                  **JAMES T. TRIMBLE, JR.**
                                                  **UNITED STATES DISTRICT JUDGE**