RECEIVED
IN ALEXANDRIA, LA.
JUL 21 2009
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| AVOYELLES PARISH SCHOOL BOARD | CIVIL ACTION NO. 08-1374 |
|---|---|
| V. | JUDGE TRIMBLE |
| UNITED STATES OF AMERICA, U.S. DEPARTMENT OF THE INTERIOR FOR THE USE AND BENEFIT OF THE U.S. FISH & WILDLIFE SERVICE, ET AL. | MAGISTRATE JUDGE KIRK |

## MEMORANDUM JUDGMENT

Before the court is the report and recommendation of the magistrate judge[1] as to Phase II of the above captioned enclosed estate litigation. Having already found that neither Lac Long Road nor Buck Road are public roads by virtue of tacit dedication,[2] as previously argued by plaintiff and several defendants, the issue now before this court is the determination of the appropriate location of plaintiff's servitude of passage under applicable law and jurisprudence.

The report and recommendation of the magistrate judge recommends, after examination of four potential routes, that the route be fixed along Lac Long Road and Buck Road, despite the prior finding that these roads are not public, based on a variety of factors including economic feasibility, practicality and provision for the type of traffic necessary for the reasonable enjoyment of plaintiff's Section 16 property. Accordingly, the magistrate judge recommends that the motions for summary judgment filed by plaintiff Avoyelles Parish School Board

---

[1] R. 158.
[2] R. 169, 170.

1

("school board")[3] and Le Chevalier, Inc. ("Le Chevalier")[4] be granted and that the motion for summary judgment filed by Elder Properties ("Elder")[5] be denied.

Objections were timely filed by both defendants United States of America through the U.S. Department of the Interior ("government")[6] and Elder.[7] While we will address these objections below,[8] the court declines to again recite the facts which gave rise to this litigation, having done so many times in the record.

Objections 1, 2, 5, 6, 7, 8, 9 and 11 assert, in various fashions, that the magistrate judge failed to properly apply Louisiana enclosed estate law. Specifically, Elder alleges that the magistrate judge was bound to recommend a route to the nearest public road, which all parties agree is Bayou Natchitoches Road. Further, Elder asserts that it was error for the magistrate judge to recommend a route which lies outside the servient estate, which the parties agree is composed of the Section 22 lands of former defendant Le Chevalier, Inc. ("Le Chevalier") and individual defendants William D. Arnouville, Carla Baudin Arnouville, David John Guillot, Angela Wynn Guillot, Clay Emil Roblin and Cynthia Gauthier Roblin (collectively "Arnouville").[9]

The court rejects Elder's assignment of error based on the magistrate's failure to locate the servitude on the servient estate. The parties to this suit agreed at oral argument that the shortest route to the nearest public road, from the southeast corner of Section 16 through Section 22 to Bayou Natchitoches Road, was not feasible because it would require the construction of an

---

[3] R. 112.
[4] R. 108.
[5] R. 72.
[6] R. 161.
[7] R. 162.
[8] We will refer to Elder's objections by the numbers assigned to them in Elder's brief.
[9] As noted by the magistrate judge, the parties agreed at oral argument that the shortest route from Section 16 to the nearest public road, Bayou Natchitoches Road, is a straight line from the southeast corner of Section 16, through Section 22 to Bayou Natchitoches Road.

2

entirely new road where none currently exists and a bridge across Bayou Natchitoches, a navigable body of water. Not only would such construction be costly, but it would require a permit from the U.S. Army Corps of Engineers under 33 U.S.C. § 401. It is important to note that, because Bayou Natchitoches runs east to west across Section 22, no route across that servient estate would circumvent the necessity of a bridge. Thus, the parties agreed that no route on the servient estate was feasible.

The parties agreed that the second shortest route to Bayou Natchitoches Road was along Knight Oil Tool Road on the property of Le Chevalier in Sections 21, 22 and 27. This route was also rejected by agreement of the parties on the basis that it only provided access to a small triangle of Section 16 at its southern boundary between Bayou Jeansonne and Lac Long. The magistrate judge correctly noted that this slight access was not the sort contemplated by La. Civ. C. Art. 690, which requires that the servitude be "suitable for the kind of traffic that is reasonably necessary for the use of that estate."

The reality, therefore, is that we must choose between what we deem the third and fourth best routes, neither of which is located on the servient estate as that term is defined by jurisprudence. Although the court plainly understands the motivation of Elder to argue against locating the servitude on his property, we find that its arguments assigning error to the magistrate for failure to locate the servitude on the servient estate[10] are disingenuous given its prior agreement that no routes on the servient estate are feasible. Such agreement is partially evidenced by Elder's consent in the voluntary dismissal of defendant Le Chevalier from this suit.[11]

---

[10] R. 162 at Objections 1 and 2.
[11] R. 166.

3

Elder asserts that the court should fix the location of the servitude upon the lands of the Arnouville defendants in Sections 14 and 15, along Pug's Road to Bayou Natchitoches Road. We concur with the finding of the magistrate that this route is less preferable than the Lac Long Road and Buck Road route for several reasons.

First, Arnouville's Section 15 land, north of Bayou Natchitoches, is cultivated farm land. Given that we are now resigned to routes other than the servient estate and are now left to assign values to the remaining choices, the court declines to require that a totally new road through cultivated crop be constructed when other alternatives are available. The only existing road on Arnouville, Roblin and Guillot's lands is Pug's Road, located south of Bayou Natchitoches. We concur with the magistrate's finding, based on the amended affidavit of the school board's engineer Lachney[12] that substantial work would be necessary to transform this road into an all weather access to Section 16.[13] Unlike Lac Long Road and Buck Road, this road is not already burdened with a servitude in favor of adjoining landowners. Moreover, at oral argument the parties agreed, south of Bayou Natchitoches, the lands of Sections 14 and 15 are low lying and swampy. Accordingly, we agree that Pug's Road, without substantial improvement, would not provide all weather access to Section 16.

Second, the route through Sections 14 and 15 would only provide the school board with access to the eastern portion of its property because Section 16 is bisected by Lac Long, which stretches, roughly, from its northern to southern boundaries. In practical terms, this would require the school board to build a bridge across Lac Long in order to gain access to its western property, the portion to which access is sought based on historical use. Although Elder agreed that limited access via Knight Oil Tool Road was not sufficient, it now asserts that limited access

---

[12] R. 148.
[13] Collins v. Reed, 316 So.2d 134 (La. App. 3 Cir. 1975) (enclosed estate owner is entitled to all-weather road).

4

is sufficient along the eastern border.[14] The court rejects this argument finds, as noted above, that access to the smaller half of the school board's land, constituting the least used portion thereof, is insufficient under La. Civ. C. Art. 690.

We now turn to the fourth route which would allow access to Section 16 via Lac Long Road east until it intersects with Buck Road and then south on Buck Road to the northern boundary of Section 16 through Sections 27, 34, 3, 9 and 10. At oral argument, the government, owner of the lands in Sections 27, 34, 3 and 10, confirmed that it has never impeded use of Lac Long Road or of Buck Road at Section 3 and along the dog leg at the southern boundary of Section 10.

Although, as discussed in the court's prior judgment as to Phase I of this litigation,[15] the maintenance records and testimony before the court simply were not adequate to enable the court to find that Lac Long Road or Buck Road were tacitly dedicated to public use, we find support for use of these roads for the benefit of an enclosed estate in the Louisiana Supreme Court's ruling in <u>Vermillion Parish School Board v. Broussard</u>.[16] We do not cite this case as authority that, under the general analysis applicable to location of servitudes of forced passage, a non-public road may be substituted for a public road. Instead, we find that this case affirms that historical access is a factor which should be considered when balancing competing factors among available routes. Historical access was also considered in <u>Bouser v. Morgan</u>.[17] In that case, the Louisiana Third Circuit Court of Appeal concluded that, because the shortest route to the nearest public road was impassible during several months each year, the trial court was correct to fix the servitude along another existing road in order to provide all weather access.

---

[14] R. 162 at Objection 11.
[15] R. 170.
[16] 270 So.2d 523 (La. 1972).
[17] 520 So.2d 937 (La. App. 3 Cir. 1987).

5

Given the volume of testimony before this court which demonstrates that Lac Long Road and Buck Road have historically constituted the route of access to the properties at issue, we cannot disregard their existence in favor of totally new route of access. Both Lac Long Road and Buck Road already accommodate the type of traffic contemplated by the school board and, while it is certain that these roads will require additional maintenance to support increased usage, we find that the potential expense of grading and filling these roads is a reasonable expense and one which the school board's own testimony indicates it is willing to bear. Common sense informs this court that refurbishment of existing roads is less costly and injurious than the construction of wholly new roads.

The parties agree that Lac Long Road, from its origin at the end of asphalt on Highway 452 to the intersection known as "first crossing," is a public road. A great volume of evidence before the court also suggests that Lac Long Road and Buck Road provided historical access to Section 16 and, moreover, to the community of Bordelonville. Pictures and testimony now before the court[18] also convince us that, while a portion of Buck Road through Elder's property is now overgrown, it still exists and would require less rehabilitation than the Pug's Road alternative. We do not conclude, as argued by Elder,[19] that use of these roads would require no improvement, but we are convinced that such improvements would be far less costly than those required on Pug's Road, especially in light of the necessity of a Section 16 bridge over Lac Long.

We concur with the finding of the magistrate judge that the majority of Lac Long Road and Buck Road is ready to be used immediately and that the majority of the necessary work on those routes is shaping and the placement of limestone and/or gravel. The affidavit and attached

---

[18] Exhibits D-Moreau 3 – 30, attached to school board's motion for summary judgment (R. 112).
[19] R. 162 at Objection 10.

report of Elder's engineer Frank Willis[20] indicates that both Pug's Road and Buck Road will deteriorate if used often in wet weather. The court does not doubt the truth of this, but finds that the addition of limestone and/or gravel and the grading of the roads is typical road maintenance and is minimal when compared with bridge construction and original road construction.

Testimony by the school board indicates that it is ready, willing and able to refurbish the existing road on the Elder property and provide the materials and perform the work necessary to extend the existing road south to the school board's Section 16 property and, thereafter, to maintain such road on the Elder property.

We also note that Elder and its assigns has used Lac Long Road and Buck Road, through government property, to access its Section 9 property on a regular basis. Testimony from Joe D. Elder and the government indicates that only two restrictions apply to Elder and its assigns as they travel through government property: weapons must be dismantled and/or encased and posted speed limits must be obeyed. We find that the magistrate's failure to apply these same restrictions, which this court believes are reasonable, to the school board and its assigns is error and we depart from his report and recommendation only for the purpose of imposing these restrictions.

The government's objections argue, generally, that it has the power to require permits of enclosed estate owners who must use its roads for ingress and egress. We have previously addressed this argument[21] and, in summary, reject this contention. The jurisprudence cited by the magistrate judge[22] in a companion case to this one supports our prior finding as to permitting. Moreover, what the government asks of this court is disparate treatment among similarly situated enclosed estate owners: unfettered access for Elder with only two restrictions and access by

---

[20] Declaration of Frank L. Willis attached to R. 129.
[21] R. 107.
[22] Civil Action No. 08-1364 at R. 49.

7

heavily restricted permit for the school board. This court will not sanction the government's attempt. Although the court recognizes the important mission of the U.S. Fish and Wildlife Service, we must also remember the important policy behind the reservation of Section 16 lands and Louisiana enclosed estate law. The court's goal, then, is to work a compromise which enables the government to fulfill its mission of protecting wildlife and habitats while simultaneously protecting the rights of landowners and the value of real property.[23]

The court also concurs with the finding of the magistrate judge that the school board's conventional servitude, as it crosses Elder's property, should be subject to Elder's option to maintain a locked gate at the entrance to his Section 9 lands, provided the school board and its assigns are allowed access through any such gate. We find that this restriction is reasonable and does not unduly interfere with the school board's right of ingress and egress.

The court acknowledges that this case is an exception to the general rules pertaining to location of servitudes of passage, but finds that the result achieved here is the most just and practical solution to this complex property dispute. Additionally, we concur with the magistrate judge that there remain no genuine issues of material fact as to where the school board's conventional servitude should be fixed.

For the reasons contained in the report and recommendation of the magistrate judge previously filed herein, and after a de novo review of the entire record and the written objections filed herein, and concurring with the magistrate judge's findings under applicable law; it is

**ORDERED, ADJUDGED AND DECREED** that the school board's motion for summary judgment[24] is **GRANTED** and the motion for summary judgment filed by Elder[25] is

---

[23] Rockholt v. Keaty, 237 So.2d 663 (La. 1970).
[24] R. 112.
[25] R. 72.

**DENIED**. The motion for summary judgment filed by Le Chevalier,[26] no longer a defendant, is **MOOT**. Accordingly, it is further

**ORDERED, ADJUDGED AND DECREED** that plaintiff's claims against defendants William D. Arnouville, Carla Baudin Arnouville, David John Guillot, Angela Wynn Guillot, Clay Emil Roblin and Cynthia Gauthier Roblin are **DISMISSED** with prejudice.

**ORDERED, ADJUDGED AND DECREED** that the school board is granted a conventional servitude of passage twenty feet in width through the property of the United States government and along and to the full extent of Lac Long Road and Buck Road, including the dog leg servitude previously established, and through Elder's Section 9 lands to the northern boundary of the school board's enclosed estate at Section 16.

**ORDERED, ADJUDGED AND DECREED** that, as it crosses the lands of the government, the conventional servitude hereby granted in favor of the school board shall be subject to two restrictions. First, the school board and its assigns shall dismantle or encase all weapons while traveling along the servitude. Second, the school board and its assigns shall obey all posted speed limit signs while traveling along the servitude. It is further

**ORDERED, ADJUDGED AND DECREED** that, as it crosses the lands of Elder at Section 9, the conventional servitude hereby granted in favor of the school board shall be subject to the restriction that Elder shall be entitled to maintain a locked gate at the entrance to his property, provided that the school board and its assigns shall have access through such gate. In order to facilitate the peaceful maintenance of the school board's conventional servitude through Elder's property the school board and Elder shall confer in order to determine a speed limit which shall pertain to that portion of the servitude lying upon Elder property. The school board shall provide all necessary materials and perform all necessary work to refurbish the existing

---

[26] R. 108.

9

road on Elder property and continue such road through Elder property to the school board's Section 16 property and shall maintain such road.

Concerning the remaining issue of indemnity under La. Civ. C. Art. 689 (Phase III), it is hereby

**ORDERED** that the concerned parties shall file motions for summary judgment on the issue of what indemnity may be owed by the school board to Elder and/or the government for damages which these parties may occasion as a result of the school board's use of its conventional servitude no later than **Friday, September 18, 2009**. Simultaneous reply briefs shall be due no later than **Wednesday, September 30, 2009**. These motions are hereby **REFERRED** to the magistrate judge for report and recommendation. To that end, it is further

**ORDERED** that the concerned parties be present at hearing on these motions before Magistrate Judge Kirk on **Wednesday, October 7, 2009 at 10:00 a.m.**

**THUS DONE AND SIGNED** in chambers at Alexandria, Louisiana this 21st day of July, 2009.

*/s/ James Trimble*
**JAMES T. TRIMBLE, JR.**
**UNITED STATES DISTRICT JUDGE**