RECEIVED
JUN - 6 2012
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | | |
|---|---|---|
| SCHOOL BOARD OF AVOYELLES PARISH | : | DOCKET NO. 1:08-1374 |
| VS. | : | JUDGE TRIMBLE |
| US DEPARTMENT OF INTERIOR, ET AL | : | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is a "Motion for Summary Judgment" (R. #194) filed by defendant, Elder Properties ("Elder") wherein the movant seeks judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure. Elder maintains that in light of the Fifth Circuit's ruling, the demands of the Avoyelles Parish School Board ("School Board") insofar as they relate to Elder Properties must be dismissed. The School Board opposes the motion.

## FACTUAL STATEMENT

In this lawsuit, the School Board is seeking a servitude of passage that would benefit an enclosed estate it owns. The enclosed estate is used primarily for the growing and harvesting of timber and recreational hunting and camping. Most hunting and camping activities occur in the wetter and colder months of the year, thus an all weather road is necessary. The School Board maintains that it is entitled to a right of passage suitable for the kind of traffic that is reasonably necessary for the property's use. The shortest distance between the land of the School Board and a public road is along a line 4,187.22 feet in length crossing the properties of Le Chevalier, Inc. and the Arnouvilles ('the Arnouville Route"). The School Board would prefer a servitude of passage

through property that crosses the Elder's property (the "Elder Route"). The distance through the lands of Elder's property, on a straight line is 5,228.63 feet (the "Elder Route"). The lands of LeChevalier, Inc. and the Arnouvilles are the servient estates.[1]

Elder maintains that the lands of the Arnouvilles are obliged to bear the servitude of passage sought by the School Board whereas, the School Board denies this and maintains that there is an exception to the shortest route rule under Louisiana law which may affect the location of the servitude of passage.

On July 21, 2009, the undersigned concurred with the findings of the magistrate judge's report and recommendation which determined that there was an exception to the general rules pertaining to the location of servitudes of passage, and that such an exception was justified because that route was the most just and practicable solution. In so holding, we fixed a route based on the historical route of access through the property of both the Department of Interior ("Department") and the Elder property– the Elder Route.[2][3] Both the Department and Elder appealed. In reversing our ruling, the Fifth Circuit held that Louisiana jurisprudence recognizes that exceptional circumstances are required before a court may depart substantially from the ordinary practice of fixing the shortest

---

[1] Le Chevalier, Inc. has previously been dismissed with prejudice as a party defendant herein, with the consent of all parties.

[2] R. #173 and 174.

[3] The judgment states in pertinent part as follows:

**ORDERED, ADJUDGED AND DECREED** that the school board is granted a conventional servitude of passage twenty feet in width through the property of the United States government and along and to the full extent of Lac Long Road and Buck Road, including the dog leg servitude previously established, and through Elder's Section 9 lands to the northern boundary of the school board's enclosed estate at Section 16.

2

route to the nearest public road.[4] The Fifth Circuit ultimately concluded that the School Board had failed to demonstrate that, as a matter of law, the route over the Refuge (Department land) and Elder's land [the Elder Route] was the only feasible route and that the School Board had not shown that the expense of utilizing the "Pug's Road route [Arnouville Route] was actually prohibitive, as opposed to merely greater than the School Board would prefer." The court remarked that "Louisiana law does not guarantee an enclosed landowner the least expensive route."[5] The court further remarked that "exceptional circumstances arise only 'when the costs associated with crossing the estate which is the shortest distance from the public road are so exceptional that from a practical standpoint it is economically unfeasible to build.' "[6]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[7] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[8] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the

---

[4] Citing Cash Point Plantation Equestrian Ctr., Inc. v. Shelton, 920 So.2d 974, 977 (La.App. 2 Cir. 2006).

[5] School Board of Avoyelles Parish v. United States Department of Interior, et al, Docket no. 09-30897 c/w 09-31102 (5th Cir. 2011).

[6] Davis v. Culpepper, 794 So.2d 68, (La.App.2 Cir.), cert. denied, 804 So.2d 646 (2001).

[7] Fed. R.Civ. P. 56(c).

[8] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

non-moving party.[9] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[10] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[11] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[12] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[13] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[14]

## LAW AND ANALYSIS

Elder files the instant motion for summary judgment seeking to be dismissed from the lawsuit. Elder submits that the cost to improve the existing road across the Arnouville Route to an all-weather road sufficient to withstand traffic associated with hunting and other recreational uses of the School Board's land is estimated to be $113,218.00. The School Board refutes this and maintains that the cost of building a new road across "Arnaudville" would be $809,360; the cost to

---

[9] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[10] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[11] Anderson, 477 U.S. at 249.

[12] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[13] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[14] Anderson, 477 U.S. at 249-50.

repair the road would be $193,630; the cost of a new bridge to access the "Arnaudville" route would be $578,570.

Elder maintains that the cost of improving the existing roads across the lands of Elder Properties and the United States (Department land) to all-weather roads sufficient to withstand traffic associated with hunting and other recreational use of the School Board's lands is $258,095 plus an additional cost of $127,400 for permitting for a total cost of $385,495. The School Boards denies this fact and maintains that the cost to build a new road across Elder (the Elder Route) would be $487,960 and to repair the Elder Road would be $163,660.

Elder maintains that a 404 permit would be needed to access the balance of the School Board property (the Elder Route) to provide bridges across waterways located on the School Board property.[15] The School Board denies this. The School Board submits the Declaration of Jefferson P. Jackson, President of Feliciana Wildlife, Inc., a wildlife and forestry management and consulting company who declares that "[t]here would be no need to do any wetlands mitigation as the act does not require permitting for an existing road or logging road;"[16] Elder maintains that the Arnouville Tract is prior converted wetlands and that improvements by the School Board of the road across the Arnouville Tract would not require a Section 404 permit from the Corps. of Engineers. The School Board denies this fact and submits that a 404 permit would be needed to access the balance of the School Board property to provide bridges across waterways located on the School Board property. Mr. Jackson declares that [t]here is presently no road that actually provides useful access to the

---

[15] The cost of the permit would be $23,450 for professional services and $103,950 for compensatory mitigation.

[16] R. #220-5.

5

Avoyelles Parish School Property by utilizing the Arnouville Property. To construct such a road would require Wetlands Mitigation by having to construct a large bridge that would cross Bayou Natchitoches as well as constructing a sizable all weather road to cross a large frequently flooded area of Section 16.

Elder submits that the existing road on the Arnouville Tract runs through agricultural fields for most of its distance and is subject to sun and wind after a rain event. The School Board disputes this. Elder submits that the roads located on the property of the United States and Elder Properties run through wooded lands where the roads are shaded in large measure. The School Board disputes this. Elder submits that the bridge across Bayou Natchitoches, used by the Arnouvilles to access their property is of sufficient integrity to be used by large agricultural equipment and trucks, whereas the School Board disputes this and maintains that the current bridge would not provide the necessary access. The School Board submits the Declaration of Thomas C. David, Jr., a Louisiana Professional Civil engineer and a Registered Land Surveyor, who declares that:

(1) the current bridge over Bayou Natchitoches does not have sufficient standard load bearing capacity for supporting the type of vehicles, such as logging trucks and concrete trucks, needed for access by the Avoyelles Parish School Board;

(2) it is not practical to attempt to repair the current wooden bridge over Bayou Natchitoches to support the type of traffic needed by the Avoyelles Parish School Board;

(3) a replacement bridge should be built to accommodate the traffic needed by the Avoyelles Parish School Board and it would cost approximately $578,570 to replace the bridge;

(4) the estimated cost to construct an elevated road over Section 14 & 15 (Pug's Road) for a length of 8,769 feet is $809,360. . .;

(5) the estimated cost to construct a non-elevated road over Section 14 &15 (Pug's Road) for a length of 8,769 feet is $193,060. . .;

(6) the estimated cost to construct an elevated road over Section 9 (Elder's Road) for a length of 5,730 feet is $487,960... ;

(7) the estimated cost to construct a non-elevated road over Section 9 ( Elder's Road) for a length of 5,730 feet is $163,660...;[17]

Mr. David further opines that the Elder Route presents a more feasible route to provide access for the traffic needed by the School Board.[18] Elder submits the Declaration of Charles Wilkes, a real estate appraiser, who attests that the value of the School Board's property with a right to legal access but without that access definitively established is $960,000, whereas with such access definitively established, the property is worth $1,216,000.

Elder argues that the route through the Arnouville property is not only the shortest route, but it is the least expensive route and is the route through the servient estate. The School Board reiterates its earlier arguments that the cost of a road through the Arnouville Route is substantially greater than that of the Elder Route. The School Board further submits evidence via affidavit that the bridge at Bayou Natchitoches would be under water two feet prior to water being on the Elder Route, and that the elevation of Elder Road is greater than the elevation of Pug's Road used on the Arnouville Route.

The School Board argues that there are genuine issues of material fact as to feasibility, location and historical access which should preclude granting the motion for summary judgment. The

---

[17] R. #220-6. Declaration of Thomas C. David, Jr.

[18] Id.

School Board has failed to submit summary judgment evidence that the Arnouville Route is prohibitive or that from a practical standpoint that route is economically unfeasible to build. In fact, the School Board only compares and disputes the cost elements, but makes no argument that the expense of using the "Pug's Road route [Arnouville Route] is actually prohibitive, as opposed to merely greater than the School Board would prefer. The Fifth Circuit has held in this case that the enclosed landowner seeking a route other than the shortest bears the burden of showing that an exceptional circumstance justifies the alternative route, and whether a cost is prohibitive depends on context, in particular regarding the value of productive use of the land over time. "A route is not unfeasible,... simply because it requires expensive improvement."[19] The Fifth Circuit ruling found that the School Board had not shown that the expense of using the Arnouville Route was actually prohibitive as opposed to merely greater than the School Board would prefer.[20]

While the School Board has presented a factual issue as to the relative cost of using the Arnouville Route (the Elder figure of $113,000 as opposed to $809,360 excluding any consideration of assessment for damage to wetlands), the School Board has not come forward with any information whatsoever as to its ability to pay the charges that it contends would be necessary to utilize the Arnouville Route. In the first trial, while we did not have a precise figure as to the Arnouville Route, with the new evidence, we still are left uninformed regarding the School Board's financial ability to pay either the lesser figures suggested by Elder or the greater figure presented by the School Board. The opinion of the Fifth Circuit made it abundantly clear that the test is not whether one route

---

[19] School Board of Avoyelles Parish v. United States, et al, ____F.3d____, 2011 WL 2937947, *19 (5th Cir. 2011).

[20] School Board of Avoyelles Parish v. United States, et al, ____F.3d____, 2011 WL 2937947 (5th Cir. 2011).

would be less costly than the other, but whether the cost of the shorter and more convenient route would be prohibitive. This court interprets that language to mean that we must take in to consideration the finances of the School Board, and there is simply no evidence in the record to establish the ability of the School Board to pay the higher figure to achieve its objective of ingress and egress.

## CONCLUSION

Based on the foregoing, the motion for summary judgment will be granted, dismissing with prejudice Elder Properties. The Court determines that there is no just reason for delay and will direct entry of final judgment under rule 54(b) of the Federal Rules of Civil Procedure.

THUS DONE AND SIGNED in Chambers at Alexandria, Louisiana, this 6th day of June, 2012.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE